MAUDE F. THORNTON, PLAINTIFF-APPELLANT, v. VILLAGE OF RIDGEWOOD, A MUNICIPAL CORPORATION OF THE COUNTY OF BERGEN AND STATE OF NEW JERSEY, ALBERT J. FABER, MAYOR, *ET ALS.*, DEFENDANTS-RESPONDENTS.

Argued January 31, 1955—Decided February 21, 1955.

*Mr. Roy J. Grimley* argued the cause for the appellant.

*Mr. William E. Reinhardt* argued the cause for the respondent Village of Ridgewood.

*Mr. Michael A. Dwyer* argued the cause for the respondent Ridgewood Elks Holding Corporation (*Messrs. Doughty & Dwyer*, attorneys).

The opinion of the court was delivered by

BURLING, J.   The civil action was instituted by the plaintiff, Maude F. Thornton, a taxpayer of the Village of Ridge-

wood in the County of Bergen and State of New Jersey, against the Village of Ridgewood, a municipal corporation, the Commissioners of the Village of Ridgewood and the Superintendent of Buildings of the Village of Ridgewood (hereinafter collectively referred to as the village), and against Ridgewood Elks Holding Corporation, a corporation of the State of New Jersey, maintaining its principal office at 131 North Maple Avenue, in the Village of Ridgewood, Bergen County, New Jersey (hereinafter called the Elks). The action was partly in the nature of an action in lieu of the former prerogative writ of *mandamus*, and partly an action of equitable nature, namely, for injunctive relief. The claims of the plaintiff related in general to a contract whereby the village agreed to purchase, and the Elks agreed to sell, the Elks' clubhouse and a tract of land on which the clubhouse stood, for use by the village as a municipal administration building. The Superior Court, Law Division, entered summary judgment for the defendants, which was affirmed by the Superior Court, Appellate Division. We allowed certification on the plaintiff's petition therefor. *Thornton v. Village of Ridgewood*, 16 *N. J.* 327 (1954).

The admitted and uncontradicted facts necessary to a determination herein are as hereinafter detailed. Except as otherwise noted, these facts are undisputed.

Since about 1925, Elks (or its predecessor in title) had been the owner of a tract of land situated in the Village of Ridgewood, known as Lot No. 2, Block No. 233, and located on the easterly side of North Maple Avenue about 269 feet north of Marshall Street. The lot had a frontage on North Maple Avenue of 430 feet and a depth of about 370 feet. North Maple Avenue was a street 41.25 feet wide.

On April 23, 1946 the village adopted a zoning ordinance, referred to as Ordinance No. 993 (supplanting a prior zoning ordinance adopted April 14, 1931), which placed the Elks' property and the surrounding territory of the municipality on three sides of the tract in a "One-Family Zone." The zoning map incorporated in the record discloses that the Elks tract

constituted the southwesterly quarter of a much larger area, the remainder of which was the Veterans Memorial Field owned by the village. North of this large area was an equally large area a considerable portion of which was shown on the zoning map as "Graydon Pool Recreation Area." The properties to the west of the Elks tract (across North Maple Avenue) appear to have been residential. The Elks tract was abutted on the south by property placed in a "Retail-Business Zone."

The 1946 zoning ordinance (No. 993) "restricts the use" of properties in the "One-Family Zone" as follows:

"Section 4. ONE-FAMILY ZONE USES

Within any one-family zone *no building or lands shall be used* in whole or in part *for any industrial, manufacturing, trade or commercial purpose, or for any other than the following specified purposes:*

(1) A residence for not more than one family. Such residence may contain the professional office of its resident owner or lessee where the office work involves principally the personal service of the said owner or lessee. The office shall occupy not more than fifty per cent of the first floor area of the residence, and in connection therewith no overnight hospital facilities shall be provided for persons or animals.

(2) Church or other place of worship, including parish house and Sunday School building, public school, hospital, library, museum, art gallery, *or any governmentally owned or operated building*, provided that the street or streets, upon which such building faces, or abuts, shall be at least 50 feet in width." (Emphasis supplied.)

Section 4, portions of which are hereinbefore quoted, also authorized various accessory buildings and professional and announcement signs.

From about 1929 the Elks (or its predecessor in title) had maintained on the tract in question a "two story and basement building known as the 'Ridgewood Elks Club' and used by the Elks Lodge as a club house," located on the northerly portion of the tract.

About September 1951 negotiations were commenced between the Elks and the village with a view to the sale of the Elks building to the village for use as a municipal building. There was a dispute between the complaint and the answers

as to the prices discussed, but the plaintiff did not aver that any binding agreement was reached during the preliminary negotiations.

On January 22, 1952 Ordinance No. 1075 was passed by the village appropriating $150,000, authorizing a bond issue for $142,500 thereof, and providing for a municipal improvement consisting of the acquisition by purchase, gift or condemnation at an *estimated* figure of $150,000, of the northerly 300 feet (including the building) of the Elks tract for municipal purposes. A protest was filed by taxpayers and the ordinance was submitted to municipal referendum; it was approved by the voters on November 4, 1952.

The village on July 8, 1952 adopted an emergency resolution appropriating $15,000 for an option to purchase, and for furtherance of the transactions pertinent to the purchase, of the Elks property "for use as municipal offices and public services in the Village of Ridgewood." It is an undisputed fact that this $15,000 appropriation was subsequently incorporated in the 1953 budget ordinance, passed March 21, 1953.

The Elks and the village, on November 18, 1952, after the approval by the voters hereinbefore mentioned, and a resolution of the village commissioners authorizing the official steps necessary, entered into a formal written contract for the sale by the Elks to the village, for a price of $155,000, of the northerly 300 feet (including the building) of the tract in question. This written contract contained an "escape" clause permitting the Elks to terminate the agreement if it were unable to secure a building permit for other property in Ridgewood.

On December 23, 1952 the village adopted an ordinance (No. 1090) purporting to rezone the southerly 130 feet of the original Elks tract to place that portion in a multi-family zone. The plaintiff and others had resisted the enactment of this ordinance, and instituted a civil action to set it aside. The suit was terminated by a judgment of the Superior Court, Law Division, setting aside Ordinance No. 1090 as "spot"

zoning, on October 27, 1953. Although the plaintiff alleged that subsequently "a new agreement" was entered into between the Elks and the village modifying the "escape" clause of their contract, the answers of the defendants and the affidavits on file conclusively show that the Elks waived the "escape" clause and closed title with the village on November 13, 1953.

The village by answer asserted the passage on first reading on November 24, 1953, of Ordinance No. 1101, widening North Maple Avenue at the *locus in quo* to 51.25 feet, and of Ordinance No. 1103 amending Ordinance No. 993, *ante*, by removing the restrictive provisions as to street width and authorizing "any municipally owned or operated building, structure or use" in "One-Family" zones. On January 7, 1954 the plaintiff herein filed a complaint in the Superior Court, Law Division, seeking to set aside Ordinances Nos. 1101 and 1103, *ante*. The village on this appeal asserted without denial by the plaintiff that such action was tried and judgment was granted sustaining the ordinance deleting the 50-foot street width provision (as it related to this case), and that no appeal was taken from that judgment.

The present action was instituted by the plaintiff by complaint filed November 13, 1953 in the Superior Court, Law Division. The plaintiff sought relief of invalidation of the agreement of sale between the Elks and the village and all acts pertinent thereto, of injunction against payment of moneys by the village to the Elks and requiring refund by the Elks to the village of moneys already paid to the Elks under the agreement, of judgment in lieu of *mandamus* requiring the village to enforce Ordinance No. 993 against itself, and incidental relief of similar character. The defendants' answers, *inter alia*, denied the plaintiff's claims on the merits as to validity of the contract, asserted that Ordinance No. 993 permitted the use of the Elks property as contemplated by the village and that the amendatory ordinances (Nos. 1101 and 1103, *ante*) removed the limitations of use based on the width of the street. The answers also

asserted that the plaintiff's complaint was not filed within the time required by *R. R.* 4:88–15 and that the plaintiff was in laches.

The Superior Court, Law Division, on motions of the defendants herein, entered summary judgment for the defendants dismissing the complaint, on the ground of laches and for failure of plaintiff to comply with *R. R.* 4:88–15, *supra*. The Superior Court, Appellate Division, affirmed, holding that the complaint was properly dismissed on these grounds. As hereinbefore noted, we allowed certification on the plaintiff's petition therefor.

The questions involved include the questions whether (a) *R. R.* 4:88–15, *supra*, is controlling under the circumstances of this case; (b) laches bars the plaintiff's action; (c) the contract of November 18, 1952 was *ultra vires* and void; (d) judgment in lieu of *mandamus* to require the village to enforce the zoning ordinance should be granted; and (e) injunctive relief against performance of the contract of November 18, 1952 should be granted.

## I.

The first question is whether application of *R. R.* 4:88–15, *supra*, sustains the dismissal of the plaintiff's complaint. *R. R.* 4:88–15(*a*) prohibits proceedings for review, hearing and relief in lieu of a prerogative writ unless the complaint is filed within 30 days of the accrual of the right to such review, hearing or relief, except as provided in *R. R.* 4:88–15(*b*). Clause (4) of *R. R.* 4:88–15(*b*), *supra*, prohibits commencement of a proceeding in lieu of prerogative writ "to review * * * an ordinance or resolution for a public improvement in any municipality, after 30 days from the date of the passage or adoption of such ordinance or resolution."

An *ultra vires* municipal contract which is entirely without the authority of the municipality is void. See *Hudson City Contracting Co. v. Jersey City Incinerator*

*Authority*, 17 *N. J.* 297 (1955) and *Scatuorchio v. Jersey City Incinerator Authority*, 14 *N. J.* 72 (1953). There is authority in jurisdictions elsewhere to the effect that a municipal contract which is *ultra vires* and void may be rescinded, and further foreign authority to the effect that such a contract, being absolutely void, does not exist and therefore there is nothing to rescind. 10 *McQuillin, Municipal Corporations* (*3d ed.* 1950), *sec.* 29.130, *p.* 506. There is also authority for the proposition that a municipal contract may be rescinded for fraud or impossibility of performance, *Ibid.*, *pp.* 504–506. And a taxpayer in a proper case may maintain an action to require repayment to the municipality of moneys paid by it under a void contract. *Id., sec.* 29.132, *pp.* 507–509.

The foregoing principles have been considered in this State. For example, the former Court of Errors and Appeals, in *Sutton v. Maurice River Township*, 93 *N. J. Eq.* 484, 485 (*E. & A.* 1922), held that ordinarily *certiorari* was the exclusive remedy of a taxpayer to review an assessment "in the absence of some peculiar ground of equity jurisdiction" and "in cases in which the proceedings were *ultra vires* the powers" of the municipality. To the same effect, in a suit for injunction brought to restrain the performance of a public work, was *Williams v. Board of Com'rs of Borough of Audubon*, 96 *N. J. Eq.* 459, 461 (*Ch.* 1924). *Cf. Luckenbach Terminals, Inc., v. North Bergen Tp.*, 127 *N. J. Eq.* 93, 95 (*E. & A.* 1940), appeal dismissed 311 *U. S.* 608, 61 *S. Ct.* 13, 85 *L. Ed.* 385 (1940); *Goodwin v. City of Millville*, 75 *N. J. Eq.* 270 (*E. & A.* 1908). The jurisdiction of equity in these cases is of ancient origin in the English law. *Mayor, etc., of Jersey City v. Lembeck*, 31 *N. J. Eq.* 255, 268–269 (*E. & A.* 1879).

Similarly, this court, in *Holloway v. Pennsauken Tp.*, 12 *N. J.* 371, 373–375 (1953), held that neither statutory limitation, laches nor former *Rule* 3:81–15(*b*)(4) (adopted

March 15, 1951, now clause (2) of paragraph (b) of *R. R.* 4:88–15, *supra*) acted as a bar to an action in lieu of *certiorari* if the enabling statute or ordinance authorizing an improvement and assessment were unconstitutional or the landowner had been deprived of fundamental constitutional rights. And in *V. F. Zahodiakin Engineering Corp. v. Zoning Bd. of Adjustment, Summit,* 8 *N. J.* 386, 395 (1952), it was held that an "utterly void" act of a municipal body is "subject to collateral attack at any time as well as (to) a direct review within the time prescribed by law." *Cf. Davaillon v. City of Elizabeth,* 121 *N. J. L.* 380, 388 (*Sup. Ct.* 1938).

██ In the present case the plaintiff's action proceeded upon the theory that the contract between the Elks and the village was void, not merely voidable, and that it was impossible of performance on the part of the municipality inasmuch as it depended upon a use to be made of the property, allegedly barred by the existing zoning ordinance. Injunctive relief was sought in this respect tantamount to a prayer for rescission of the municipal contract involved, as well as a claim for refund of moneys already paid to the Elks by the village pursuant to the allegedly void municipal contract. These equitable remedies are not barred by *R. R.* 4:88–15, *supra,* although the plaintiff's failure to resort to a proceeding in lieu of the prerogative writ of *certiorari* to set aside the municipal contract may be considered on the question of application of the defense of laches under the circumstances of the case.

██ Further, the plaintiff's complaint entailed a claim for relief in the nature of *mandamus* requiring the village and the appropriate municipal officials to enforce the zoning ordinance against the use contemplated by the municipality. Such an action may be instituted when it appears that the municipal officials are derelict in this respect. *Dolan v. De Capua,* 16 *N. J.* 599, 614 (1954). Adjectively, in the present case the circumstances do not sustain the dismissal of the complaint in this respect under *R. R.* 4:88–15, *supra.*

## II.

The second question involved is whether laches barred the plaintiff's suit. In this respect the elements hereinabove discussed are pertinent. Doctrines of estoppel are not applied against municipal corporations to the same extent as they are against private corporations. *City of Bayonne v. Murphy & Perrett Co.*, 7 *N. J.* 298, 311 (1951). Upon the same reasoning we are of the opinion that laches, being a form of estoppel, should not be applied against a taxpayer, who sues in the behalf of the municipality to prevent alleged misuse of municipal funds, to the same extent as against a person suing in his own behalf. This philosophy would seem to be especially applicable where as here the municipal contract was executory at the time of filing suit, or where no actions to alter the building involved had been taken although the conveyances had been effected on the day the suit was filed. If the contract were void as alleged, the municipality would be required at most to relinquish the benefits it had received. *Cf. Hudson City Contracting Co. v. Jersey City Incinerator Authority, supra.* Under these circumstances we are of the opinion that the possible detriment to the Elks is insufficient adjectively to bar the plaintiff's suit upon the basis of unreasonable and prejudicial delay.

Laches, in the former practice under the prerogative writs, *allowable in the discretion* of the former Supreme Court, was held to be available as a defense "when it appears that the public interest will suffer, or private injustice will be done." *Whitney Glass Works v. Glassboro Tp.*, 79 *N. J. L.* 352, 353 (*Sup. Ct.* 1910). *Cf. Bowne v. Logan*, 43 *N. J. L.* 421, 423 (*Sup. Ct.* 1881); *State (Hampson, Pros.) v. Mayor and Aldermen of City of Paterson*, 36 *N. J. L.* 159 (*Sup. Ct.* 1873). The tenor of this class of cases was that the taxpayer's suit in *certiorari* would not be heard if the municipality would be unjustly enriched by the setting aside of the contract, in the absence of fraud in the making of the con-

tract, by retention of benefits under an *ultra vires* contract, of which benefits it could not divest itself to restore the contractor to the *status quo*. The limitations of this philosophy have been expressed by us recently in *Hudson City Contracting Co. v. Jersey City Incinerator Authority, supra*.

The present action, however, was not in lieu of *certiorari*, but was brought principally for equitable relief based upon the allegation of invalidity of the municipal contract, and for a judgment in lieu of *mandamus* to enforce the zoning ordinance. Under the circumstances of this case both the village and the Elks have been fully aware of the plaintiff's and others', objections since January 1952, when the negotiations for the purchase of the Elks property were made public by the passage of the ordinance authorizing a bond issue to establish a fund to be applied to the acquisition of the property. Adjectively there is no warrant for the dismissal of the complaint in this case upon the ground of laches.

### III.

A question involved in this matter is the question whether the contract of November 18, 1952, between the village and the Elks, was *ultra vires* and void.

The plaintiff's arguments are fourfold: (a) that the contract contemplated changing and enlarging a present nonconforming use in the "One-Family" zone of the municipality; (b) that the contract contemplated a use prohibited in a "One-Family" zone of the municipality; (c) that the contract condoned an attempt to "spot zone" a portion of the Elks property adjacent to the premises in question subjected to the contract; and (d) that the contract provided for the payment of public funds in excess of the appropriation made by Ordinance No. 1075, *ante*, for the purpose intended. We find these points of argument without merit under the circumstances of this case.

The initial arguments of the plaintiff hereinabove adverted to are premised upon the theory that a municipality is bound by the provisions of its own zoning ordinance.

■ There is authority to the effect that municipal officials usually comply with, and should be the first to obey, the requirements of the municipal zoning ordinance. *Bassett, Zoning* (1940), *pp*. 31, 212. However, it is said, "The need of a public building in a certain location ought to be determined by the federal, state, or municipal authority, and its determination on the question of necessary or desirable location cannot be interfered with by a local zoning ordinance * * *." *Id., p*. 31. *Cf., Id., p*. 212. This philosophy may be modified where there is a definitely fixed legislative policy of the State. 1 *Yokley, Zoning Law and Practice (2d ed.* 1953), *sec.* 40, *p.* 71. Compare 58 *Am. Jur., Zoning, sec.* 120, *pp.* 1008–1009. No fixed legislative policy opposed to the discretionary municipal location by the village of its administrative offices is adverted to by the plaintiff herein. The constitutional power gives a broad discretion to the Legislature and the respective municipal bodies in zoning matters. See *N. J. Const.* 1947, *Art.* IV, *Sec.* VI, *par.* 2. And the provisions of the Constitution and of any law concerning municipal corporations formed for local government "shall be liberally construed in their favor." *N. J. Const.* 1947, *Art.* IV, *Sec.* VII, *par.* 11.

■ The zoning statute, *R. S.* 40:55–30 *et seq.*, and the amendments and supplements thereto, contain no specific limitation upon municipal use of land. The essential considerations of zoning require the municipality to adhere to basic purposes (including security from fire, panic and other dangers; promotion of health, morals and general welfare; adequate light and air; prevention of overcrowding and of undue concentration of population; the character of the district and its peculiar suitability for particular uses) "with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality." *R. S.* 40:55–32. Compare, however, *N. J. S. A.* 40:55–7, which related to municipal planning board approval of the location of a public building but expressly authorized

a municipal governing body to override planning board disapproval. *Cf., L.* 1953, *c.* 433, *sec.* 11, *sec.* 13, *N. J. S. A.* 40:55–1.11, 1.13.

■ This question involved in the present case depends upon construction of Ordinance No. 993, *ante.* The validity of this ordinance is not questioned by any party to these proceedings.

Ordinance No. 993, section 4, *ante*, prohibited in "One-Family" zones any "industrial, manufacturing, trade or commercial purpose" and additionally prohibited use for purposes "other than," *inter alia*, residential and accessory purposes and churches, "Sunday Schools," public schools, hospitals, libraries, museums, art galleries, "or any governmentally owned or operated building."

The foregoing provisions of section 4 of the ordinance seem to bar governmental buildings devoted to industrial or proprietary use (for instance, utility plants), manufacturing or trade use (for instance, governmentally operated markets), or commercial use (for instance, a municipal garage for off-street public parking), but a governmental *administration* building and assembly hall, such as is contemplated here, is not within these categories. It is *sui generis*, and constitutes a distinct class capable of distinguishment from industrial, manufacturing, trade or commercial uses. *Cf. Yanow v. Seven Oaks Park, Inc.*, 11 *N. J.* 341, 351–360 (1953).

■ It was asserted by the plaintiff that the use of a building in a residential zone for the purpose of municipal government administration is contrary to the zone plan and the theory of the zoning statute, and therefore is an improper classification. This argument cannot prevail. If the municipality were completely residential no one would say that the use of its municipal offices would be incompatible. Where, as here, the municipality is not entirely residential the most that can be said against the use in a residential zone contemplated by section 4 of Ordinance No. 993, *ante*, and proposed to be made of the Elks premises purchased by the village, is that the classification is fairly debatable. Where

such a condition is disclosed, the legislative judgment must prevail. *Yanow v. Seven Oaks Park, Inc., supra* (11 *N. J.,* at *page* 353).

We find that the use contemplated by the village was permitted under section 4, subsection (2) of the Ordinance No. 993, *ante.* This renders it unnecessary to resort to consideration of the amendatory ordinances, Nos. 1101 and 1103, *ante,* except insofar as the removal of the street-width limitation is pertinent to the validity of the contract of November 18, 1952. The 50-foot width limitation applied to schools, hospitals, libraries, museums, and art galleries, as well as governmental buildings. Conceivably the necessity for such a limitation might be found no longer to exist. No reason was advanced by the plaintiff to demonstrate inherent unreasonableness of the removal of this limitation as it affects this case, and the plaintiff does not deny the assertion by the village on this appeal that a judgment upholding this action has been rendered and has not been appealed.

In this respect the mere existence of the limitation at the time of the contract did not render the contract *ultra vires.*

The next facet of the plaintiff's argument is that the contract "condoned" a municipal effort to "spot zone" a portion of the Elks property adjacent to the premises in question. This point is without merit. The contract did not bind the village to rezone any area of the municipality. Further, it expressly provided that the premises covered by the agreement were "sold subject to the zoning ordinances."

The final phase of the plaintiff's attack on the contract was that it exceeded the amount appropriated under Ordinance No. 1075, *ante.* Ordinance No. 1075, which was approved by referendum, authorized the municipal improvement but only estimated the price. The municipal governing body's resolution in July 1952 appropriated an additional $15,000 for the project, and this appropriation was ratified by the 1953 budget ordinance. We find, therefore, that the contract was not in excess of the amounts appropriated for the specific purpose by ordinance.

516

There being shown palpably that there is no genuine issue as to any material fact challenged, for the reasons hereinabove expressed we find that the contract of November 18, 1952 between the village and the Elks, in the respects on which its validity was questioned by the plaintiff, was valid.

### IV.

There is also involved in this appeal the question whether the plaintiff is entitled to a judgment in lieu of *mandamus* to require the municipal officials to enforce the zoning ordinance. This question is disposed of adversely to the plaintiff in the reasons hereinbefore expressed in relation to the zoning ordinances of the municipality (Part III of this opinion, *ante*). No genuine issue of fact exists. Since the use is permitted, no present need for judgment in lieu of *mandamus* exists. *Cf. Dolan v. De Capua, supra* (16 *N. J.*, at *page* 614).

### V.

The final question involved is the question whether the injunctive relief sought by the plaintiff should have been granted. Inasmuch as the contract is valid and no conflict with the zoning ordinances of the municipality exists, no such relief is available.

### CONCLUSION

For the reasons hereinabove expressed the judgment of the Superior Court, Appellate Division, affirming the summary judgment of dismissal of the complaint of the plaintiff, Maude F. Thornton, entered in the Superior Court, Law Division, is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.