MARIO LETTIERI, PLAINTIFF-APPELLANT, v. THE STATE BOARD OF MEDICAL EXAMINERS, DEFENDANT-RESPONDENT.

THE STATE BOARD OF MEDICAL EXAMINERS, PLAINTIFF, v. MARIO LETTIERI AND CONCETTA MANGO LETTIERI, ALSO KNOWN AS CONCETTA GRACE MANGO, DEFENDANTS.

Argued March 4, 1957—Decided May 6, 1957.

*Mr. Victor S. Kilkenny* argued the cause for plaintiff-appellant (*Messrs. Cullum & Cullum,* attorneys; *Messrs. Joseph V. Cullum* and *Victor S. Kilkenny,* of counsel).

*Mr. John F. Crane* argued the cause for defendant-respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney; *Mr. Christian Bollermann,* Deputy Attorney-General, of counsel).

The opinion of the court was delivered by
WEINTRAUB, J. Plaintiff Mario Lettieri appeals from a judgment of the Law Division dismissing his complaint in lieu of prerogative writ wherein he sought to compel the State Board of Medical Examiners to issue a license for the practice of medicine. By stipulation below, a companion action by the Board to restrain Lettieri from practicing medicine depends upon the outcome of these proceedings. We certified the appeal on our motion prior to consideration of it by the Appellate Division.

Plaintiff's saga begins *circa* 1945 when he entered the Essex College of Medicine and Surgery. About two years later he entered the College of Physicians and Surgeons at Boston, Mass., apparently because of the demise of the Essex College. He completed his studies successfully, and thereafter a year's internship at the Hudson County General Hospital in this State. He applied to take the June 1950 medical examination, but was found ineligible because the Massachusetts college was not registered by the Board.

In 1953 the Legislature enacted *chapter* 363, *N. J. S. A.* 45:9–8.2, to relieve a group of residents who were graduates of unapproved schools, presumably upon a finding

of equities peculiar to them and compatibility with the basic concept of fitness. The statute, so far as Dr. Lettieri is concerned, required proof to the Board that:

"he has received a diploma from a legally incorporated professional school or college in the United States, after completing a four years' course in study, conferring upon him the degree of Doctor of Medicine, and has completed an internship acceptable to the board of at least one year in a hospital approved by the board; and * * * in addition has * * * (c) received a diploma conferring upon him a graduate pharmacist degree of Ph.G. and is the holder of a certificate of registration permitting him to practice pharmacy in the State of New Jersey."

The statute provides that upon proof of the foregoing the applicant "shall * * * be admitted to examination by said board * * * and upon passing such examination, shall be entitled to receive from the board a license to practice medicine and surgery in all its branches in this State." Application had to be made within 90 days of the effective date of the act, August 11, 1953, and the statute provided for its own expiration, *i. e.,* "shall become void and of no effect six months after the effective date thereof."

Dr. Lettieri indisputably satisfied all prerequisites other than "an internship acceptable to the board of at least one year in a hospital approved by the board," and his difficulties revolved about that provision.

When the Board rejected the 1950 application it did not comment upon the sufficiency of the internship. His application under the 1953 act was returned by letter of October 15, 1953, which cryptically advised "that you do not meet the requirements of Chapter 363, P. L. 1953." An inquiry by counsel resulted in a telegram two days later from the Board's secretary to Dr. Lettieri to "kindly report for examination * * * on Tuesday Oct. 20th." He did, and passed, finishing sixth among the 21 who participated.

On October 30, 1953 the secretary wrote plaintiff that he was admitted to the October examination "on condition that, if successful, license [will] be withheld until you meet

the requirements of Chapter 363." The letter stated the difficulty to be that the Hudson County General Hospital was not approved for intern training, and hence "you will be required to complete one year of general rotating internship in a hospital approved by the Board." Thereupon Dr. Lettieri contacted Dr. O'Hanlon, who apparently had been director of both the Hudson County General Hospital and the Jersey City Medical Center, an approved hospital, and who agreed to advise the Board that the two hospitals had been operated as a unit, meaning, we gather, that interns at the county hospital were sent to the Medical Center for tours of duty to satisfy the requirements of the rotating internship.

On November 11, 1953 the secretary of the Board sent plaintiff a formal notification that "It affords me much pleasure to inform you that the result of the examination of No. 18 [plaintiff's assigned number at the examination] before the board at Trenton, N. J., on the 20, 21, 22 and 23 of October 1953 is satisfactory, and that a certified copy of your Certificate of License will be mailed to you on or about December 1st." Dr. Lettieri invested some $5,000 in office appointments and equipment.

The certified copy of the license not having arrived, plaintiff visited the secretary of the Board in December. The secretary telephoned Dr. O'Hanlon with respect to the status of the county hospital, and according to plaintiff he understood that upon receipt of a letter from Dr. O'Hanlon the matter would be satisfactorily concluded. Dr. O'Hanlon did write in harmony with his oral representations, and we find that the Board withdrew the objection it had theretofore advanced. However, it then determined that the internship was inadequate with respect to obstetrics and invited plaintiff to attend its meeting of February 10, 1954, at which it stipulated that he pursue six weeks in obstetrics at a maternity hospital.

Dr. Lettieri claims he had already met the obstetrics requirement at the Margaret Hague Maternity Hospital and by other experience at Massachusetts hospitals, but if

that were the nub of the dispute, he would be loathe to question the Board's evaluation. At any rate, Dr. Lettieri readily agreed to the additional period of internship and promptly entered upon. However, five weeks after its commencement, the secretary of the Board wrote to him that on March 10 the Board reviewed his internship "and it now appears that it is unacceptable as it was not served before October 14, 1953," and "We are informing you in order that you may not spend six weeks time in obstetrical training, which was suggested at the last meeting of the Board." Dr. Lettieri completed the six weeks of training.

Dr. Lettieri again sought aid to work out his problem and the matter drifted into 1955. On March 7, 1955 his counsel formally demanded a certified copy of the' certificate of license, and it not being forthcoming, started this suit on March 28, 1955.

The minutes of the Board reveal the following: On October 14, 1953, after noting "Hospital not approved. Has not had 1 yr. of approved internship," the Board resolved that Dr. Lettieri "be admitted to the examination on condition that license be withheld until he meets the requirements contained in Chapter 363, P. L. 1953." On November 11, 1953 it was resolved "That all candidates receiving an average of 75% or more in each and every subject be granted a license," after which appears Dr. Lettieri's name with an average of 83%. On February 10, 1954, the stipulation for the six weeks in obstetrics is recorded. On March 10, 1954 appears the resolution "That we write Dr. Mario Lettieri and inform him that we have reviewed his status of internship and it now appears that it is unacceptable as it was not served before October 14, 1953."

In the meantime, Dr. Lettieri's name was entered as a licensee on the formal register maintained pursuant to *R. S.* 45:9–5 with a license number assigned to him, but at a later date, not disclosed, some one added in red ink "Not issued."

The Board's position is that under *chapter* 363 the internship had to be completed either before the examination

or before the expiration of the statute. The trial court accepted the first alternative. We are unable to agree with either view. In specifying a year's internship "acceptable to the board" the Legislature contemplated the exercise of the Board's judgment in the light of its prior practice. The record shows that the Board had theretofore conditionally admitted applicants to examination where the internship requirement had been substantially met but was thought to be weak or inadequate in some respect. The six months' expiration date in the statute was designed to limit the opportunity to a single examination rather than to foreclose remediable periods of internship thereafter. We are satisfied that the Board was correct in its initial view that it could specify the six-week period in obstetrics notwithstanding the terminal statutory date. Dr. Lettieri met the requirement. He is entitled to licensure by virtue of the statutory command unless the remaining objections are a bar, and we think they are not.

The Board urged and the trial court agreed that the action was not brought within 30 days "of the accrual of the right to such review, hearing or relief." *R. R.* 4:88–15(*a*). Defendant would measure the time from its action of March 10, 1954. Plaintiff calculates the time from the rejection of his formal demand of March 7, 1955.

The resolution of November 11, 1953 granted licensure, and if that resolution be read to continue the prior stipulated condition that a proper internship be completed, the condition was met. The condition was in fact met as of the time of the examination in the sense that the condition was initially based on the thesis that the internship was not served in an approved hospital and that objection was thereafter withdrawn; and if the condition be deemed to embrace the later requirement for six weeks in obstetrics, it too was met. Plaintiff thereby acquired a right under the statute to receive a license.

The Board sees this case as one to review its action of March 10, 1954. It is not; rather plaintiff seeks enforcement of a continuing right to receive a license pursuant to

the statute and the earlier resolution of the Board directing his license to issue. *Yanuzzi v. Mayor and Council of Borough of Spring Lake*, 22 *N. J.* 567 (1956). If the Board on March 10, 1954 had explicitly undertaken to rescind its earlier resolution and the entry on the register, the question might then arise whether plaintiff would be required within 30 days thereafter to attack the rescission. But the Board did not rescind. In strictness (and the defense should thus be viewed in the circumstances of this case), the resolution of March 10 did no more than provide "That we write to Dr. Mario Lettieri and inform him that we have reviewed his status of internship and it now appears that it is unacceptable as it was not served before October 14, 1953." It failed to undo what had been done. And if the Board did intend thereby to rescind the prior resolution, yet its action could well be construed, as plaintiff did construe it, to leave the door open for further discussion. Especially is this so in the light of the Board's prior record of equivocation. An agency which would claim the 30-day bar should act and speak with unmistakable finality. We are satisfied plaintiff sued within time. *Cf. Pellet v. Board of Com'rs of Mayor and Council of City of Hoboken*, 4 *N. J. Super* 259 (*App. Div.* 1949), certification denied 3 *N. J.* 368 (1949).

On this appeal defendant for the first time challenged the constitutionality of *chapter* 363. It asserts the legislation is special and invalid for want of compliance with *Article IV, Section VII, paragraph* 8 of the State Constitution and violative of the equal protection clause of the Fourteenth Amendment to the Federal Constitution. We may, but need not, accept a constitutional issue not raised below. *Fischer v. Township of Bedminster*, 11 *N. J.* 194 (1952); *Roberts Electric, Inc., v. Foundations & Excavations, Inc.*, 5 *N. J.* 426 (1950); *State ex rel. Wm. Eckelmann, Inc., v. Jones*, 4 *N. J.* 374 (1950). Plaintiffs' professional fitness has been verified by examination and he has met the Board's internship requirements. Others have been licensed under the statute and it has since expired. We find no compelling

public interest which would be served by entertaining the question.

The judgment is accordingly reversed and the cause remanded with directions for the entry of judgment in favor of plaintiff commanding the issuance of a license.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, BURLING, JACOBS and WEINTRAUB—5.

*For affirmance*—Justice OLIPHANT—1.