25 N.J. Super. 75 (1953)
95 A.2d 491
NANCY FRIGIOLA, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF ROSE FRIGIOLA, PETITIONER-APPELLANT,
v.
STATE BOARD OF EDUCATION AND THE BOARD OF TRUSTEES OF THE TEACHERS' PENSION AND ANNUITY FUND, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1953.
Decided March 4, 1953.
*77 Before Judges EASTWOOD, BIGELOW, and JAYNE.
Mr. Nicholas S. Schloeder argued the cause for appellant (Mr. Alfred M. Cozzi, attorney).
Mr. Joseph A. Murphy, Assistant Deputy Attorney-General, argued the cause for respondents (Mr. Theodore D. Parsons, Attorney-General of New Jersey).
The opinion of the court was delivered by JAYNE, J.A.D.
We acquire the following pertinent information from the stipulation of facts to which counsel for the appellant and respondent have subscribed. One Rose Frigiola was born on July 12, 1895. She attained the qualifications of a teacher and latterly pursued her vocation in the public school of Fairview, New Jersey, until she became physically incapacitated on June 30, 1948. She died on July 15, 1949.
She had, however, on September 14, 1929 applied for enrollment in the Teachers' Pension and Annuity Fund and received her certificate of membership on October 1, 1929. On December 12, 1929 a certificate of prior service was issued to her crediting her with ten years of service as a teacher in the public schools of New Jersey, in consideration of which she thereafter made the requisite contributions to the fund.
The "general administration and responsibility for the proper operation of the retirement system" (R.S. 18:13-24, et seq.) is delegated by the Legislature to a board of trustees. At a meeting of the board on March 8, 1929 it appears from the minutes that:
*78 "The Board approved the text of a new Application for Retirement and Information to Applicants for Retirement, and authorized the secretary to have the new forms printed and put into use at the earliest possible date."
The application form so approved contained, inter alia, the following:
"* * * If Option I is requested, the retirement does not become effective earlier than thirty days from the time the Option I request is received in the Pension Fund office. Members who contemplate applying for retirement should therefore have their papers in the Pension Fund office in time for the board to act upon them in advance of the date on which their salary is to stop."
It may be explained that prior to March 8, 1929 all pensions for service and disability became effective upon approval by the board.
In the present case the chronology of the sequential occurrences is significant. On June 16, 1949 Rose Frigiola presented the formal application for the allowance to her of a total disability pension (Option I) with the supervising principal of the Fairview Public Schools, which after its augmentation was mailed to the office of the pension fund on June 20, 1949 and its receipt on June 22, 1949 acknowledged. On July 7, 1949 the board of trustees of the pension fund approved the disability retirement as of June 22, 1949 to become effective 30 days thereafter, namely on July 22, 1949.
The circumstance that the applicant died after the approval of her application but before the expiration of the 30-day period succeeding the receipt of the application has occasioned this litigation.
It seems evident that if the retirement pension under Option I accrued immediately upon its approval by the board the appellant as the present beneficiary is entitled to $9,575, and that if the pension did not accrue until the expiration of the 30-day period the appellant is entitled only to the accumulated contributions of the decedent to the fund amounting to $2,724 plus interest.
*79 The board of trustees adhered to the 30-day rule and concluded that the beneficiary was entitled only to the return of the accumulated contributions. On appeal (R.S. 18:13-58) the State Board of Education expressed a concordant conclusion which we are requested to review.
Upon an analysis of all the circumstances the State Board of Education in its decision stated:
"The decision in the case under litigation would seem to turn on whether the rule requiring a thirty-day waiting period before the vesting of the pension is administrative or legislative."
We also regard that to be the fundamental and basic question.
The auxiliary insistence of the appellant that the 30-day provision should not be recognized as a duly adopted "rule" is not impressive. True, the provision is not embodied verbatim in the minutes of the meeting of the board of trustees on March 8, 1929. We feel, however, that the express reference in the minutes to the textual composition of the new form of the application in which the provision is fully set forth evidences the action of the board which in effect constituted a promulgation of the rule. The form and substance of the proposed application were fused into a unity. Moreover in the decision in Morgan v. Board of Trustees, Teachers', &c., Fund, 120 N.J.L. 567 (Sup. Ct. 1938), affirmed 122 N.J.L. 382 (E. & A. 1939), the provision is spoken of as a "rule" of the board. Our attention is also invited to Article V, Section IV, paragraph 6 of the Constitution of 1947. We need only say that we deem that provision to be prospective in its application. Cf. Article XI, Section I, paragraph 3, by which all former rules and regulations of administrative bodies are continued in effect.
Another point advocated by counsel for the appellant is that if the provision is to be recognized as an adequately promulgated rule it operates only to postpone the date of the retirement and not the origin of the approved pension. Such a construction of the rule seems to be unjustified. No such intent inheres implicitly in it. The rationale of the *80 decision in the Morgan case, supra, is more syllogistic wherein it was stated: "The purpose of the rule is to minimize `death bed' applications from being effective." (Emphasis supplied.)
Now comes the pivotal question. Preliminarily we may remark that we are not unaware of or insensible to the general principle that administrative regulations have in their support the presumption, although rebuttable, of validity and that the administrative agency has acted lawfully, regularly and not oppressively. Then, if the measures adopted are within the lawfully delegated authority of the agency, and tend to serve a legitimate interest of society, the wisdom, need, and appropriateness of the course pursued is not ordinarily a justiciable question. Welsh Farms, Inc. v. Bergsma, 16 N.J. Super. 295 (App. Div. 1951).
In such inquiries the distinction must be fresh in mind between the making of a law and the execution of it. "Administrative implementation cannot deviate from the principle and policy of the statute." Abelson's, Inc. v. N.J. State Board of Optometrists, 5 N.J. 412, 424 (1950).
And so, the specific question which is propounded to us is whether or not the adoption of the rule with which we are here concerned surpassed the administrative authority delegated to the board of trustees by the Legislature.
There is reason to doubt that the opinion rendered by the Supreme Court in the Morgan case, supra, is precedential in the dissimilar circumstances of the present case. There the application related to a superannuation retirement. R.S. 18:13-50. That section of the statute expressly confers upon the board of trustees in dealing with such an application the authority to "retire the member at the time specified or at such other time within thirty days thereafter as it may find advisable." Moreover in the Morgan case the applicant died before the application was acted upon by the board of trustees and it was held that a "retirement within the meaning of the statute never occurred."
The application of present interest was filed for a disability retirement in pursuance of R.S. 18:13-57 which, perhaps significantly and maybe purposefully, omits any *81 reference whatever to a postponement of the retirement by the board.
To the contrary, the statute relative to retirements for disability declares that:
"A teacher who is a member shall be retired for disability by the board of trustees upon the application of his employer or upon his own application or that of a person acting in his behalf, on a disability allowance if he is under the age of sixty-two years, if:
a. The board of trustees shall determine, after a medical examination of the member, at the place of his residence within the state or other place mutually agreed upon, by a physician or physicians designated by the board, upon the basis of a report submitted by such physician or physicians, that the member is physically or mentally incapacitated for the performance of duty and ought to be retired; and * * *."
This section of the statute seems to us to be explicitly declaratory of the legislative intention that a teacher who is a member of the fund shall be retired for disability when the board of trustees determines after a reported medical examination of the member by a physician or physicians selected by the board that the member is physically or mentally incapacitated for the performance of duty and ought to be retired. Here, the board made that determination on July 7, 1949 during the lifetime of the member.
Recognizing the manifest declaration of the legislative intent, the rule adopted by the board constitutes an endeavor to attach a material qualification to the mandate of the statute. Such an endeavor, however wisely exerted, oversteps the boundaries of administration and trespasses upon the field of the Legislature. An administrative rule is not necessarily valid because it is useful.
Our conclusions are that the 30-day rule in its application to disability retirement under R.S. 18:13-57 is invalid; that the retirement in the instant case became effective under the statute on July 7, 1949; and that the decision of the State Board of Education here under review is reversed.
Judgment accordingly.