IN THE MATTER OF REGULATION F–22 OF THE OFFICE OF MILK INDUSTRY OF THE STATE OF NEW JERSEY.

HAMILTON FARMS, INC., PLAINTIFF, v. FLOYD R. HOFFMAN, DIRECTOR, OFFICE OF MILK INDUSTRY, DEFENDANT.

Argued May 19, 1959—Decided June 30, 1959.

338

Mr. *Edward W. Currie* argued the cause for plaintiff.

Mr. *William L. Boyan,* Deputy Attorney General, argued the cause for defendant (*Mr. David D. Furman,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

FRANCIS, J.   Plaintiff Hamilton Farms, Inc., a licensed wholesale milk dealer of this State, instituted a declaratory judgment proceeding in the Superior Court, Appellate Division, in order to obtain a declaration as to the validity of a regulation of the Office of Milk Industry which prohibits the wholesale delivery of milk on Sunday in certain milk marketing areas of the State.   At about the same time Hamilton also took an appeal under *R. R.* 4:88–8 challenging the legality of the regulation.   The Appellate Division consolidated the actions and granted leave to take such additional testimony in the Law Division as the parties desired to submit in support of their respective claims.   (In this connection, attention is called to the preference in *R. R.* 4:88–9 and 11 for the taking of such testimony before the agency.)   Upon completion of the record and before argument in the Appellate Division, we certified the matter on our own motion for determination in this court.

In approaching the issue presented, a few preliminary observations may be helpful for purposes of perspective.   For a long time it has been settled in this State that the milk industry has sufficient identification with the public interest to warrant regulation.   *Abbotts Dairies v. Armstrong,* 14 *N. J.* 319 (1954).   The current statutes on

the subject, *N. J. S. A.* 4:1–24 *et seq.* and 4:12A–1 *et seq.*, establish the Office of Milk Industry and provide for its operation under the supervision of a Director. Power is conferred upon him to "regulate conditions and terms of sale; establish and require observance of fair trade practices; supervise, regulate and control the entire milk industry of the State of New Jersey, including the * * * disposal, sale or resale * * * of milk as defined in [the] act * * * in those matters and in every way necessary to carry out the purposes of [the] act and necessary to control or prevent unfair, unjust, destructive or demoralizing practices which are likely to result in the demoralization of agricultural interest in this State engaged in the production of milk or interfere with the maintenance of a fresh, wholesome supply of sanitary milk for the consumers of this State; * * *." *N. J. S. A.* 4:12A–21. When a regulation promulgated by him comes under attack, its support must be found within the scope of the statutory authority thus granted and, of course, it cannot be arbitrary, unreasonable or discriminatory. Personal or property rights of those engaged in the industry cannot be curtailed by fiat of the Director unless supportive power therefor is found expressly or by implication in the legislative language. *Abbotts Dairies v. Armstrong, supra,* 14 *N. J.* at *p.* 329; *In re Port Murray Dairy Co.,* 6 *N. J. Super.* 285, 302 (*App. Div.* 1950); *Garden State Farms v. Armstrong,* 31 *N. J. Super.* 61 (*App. Div.* 1954); *Sherry v. Schomp,* 31 *N. J. Super.* 267 (*App. Div.* 1954).

On March 14, 1958 the Director issued amended Regulation F–22, which is the subject of the appeal. The original F–22, which is challenged in the declaratory judgment action, was adopted August 10, 1950, and so far as the plaintiff is concerned the provision with respect to Sunday operations has been the same since that time. The 1958 amendment made some changes in parts of the regulation which do not affect its business. Since it is obvious from the record that plaintiff has known of the rule for at least eight years

and, in fact, once paid a fine for a violation, the Attorney General contends that the proceeding for declaratory judgment should be dismissed under R. R. 4:88–15(a) for lack of timeliness. Although much may be said for the criticism, since the matter is one in which the entire industry has indicated an interest and since in a license suspension or revocation proceeding, the defense of invalidity of F–22 could be raised, we have concluded that a decision should be reached on the merits of the controversy. See R. R. 4:88–15(c).

Regulation F–22 says (so far as here pertinent):

"1. No wholesale deliveries of milk and/or milk products may be made on Sunday, in any week, in Milk Marketing Areas *One* and *Three* except as follows: In the area beginning at the junction of the Garden State Parkway and Route U. S. No. 9 south of South Amboy and continuing along the *western* boundary of the Garden State Parkway in a southern direction to the point where the Garden State Parkway crosses the Mullica River." (Emphasis added)

In the excepted territory between May 15 and September 15 such deliveries are authorized to be made under the regulation on every day of the week, including Sunday. And in this area between September 15 and May 15 such deliveries are restricted to a maximum of six days a week, one of which may be Sunday, according to the wish of the dealer.

F–22 continues:

"In Milk Marketing Area Two, the maximum number of days in a week that milk or milk products may be delivered wholesale is six."

Thus in Area Two there is no Sunday delivery ban. The restriction limits deliveries to six days a week, but one of the days utilized at the desire of the dealer may be Sunday.

By virtue of Regulation H–7 the entire State has been divided into three marketing areas by the Director. (Partition into marketing areas has been sanctioned. *Abbotts Dairies v. Armstrong, supra*, 14 *N. J.* at *page* 331.)    No

claim is made here that the boundaries selected are unreasonable. Marketing Area One includes:

"[T]he Counties of Bergen, Essex, Hudson, Hunterdon, Middlesex, Monmouth, Morris, Passaic, Somerset, Sussex, Union, Warren and Ocean except the boroughs of Barnegat Light, Beach Haven, Harvey Cedars, Ship Bottom, Surf City, Tuckerton and the townships of Eagleswood, Lacey, Little Egg Harbor, Long Beach, Ocean, Stafford and Union."

Plaintiff operates solely in Bergen and Hudson Counties and so is within the proscription against wholesale Sunday deliveries.

Marketing Area Two includes most of Atlantic and Cape May Counties.

Area Three includes:

"[T]he Counties of Mercer, Burlington, Camden, Gloucester, Salem, Cumberland, and those parts of Atlantic, Cape May and Ocean Counties not included in Areas 1 and 2."

The effect of F–22 and H–7 may be summarized as follows:

(1) In all sections of the State save the shore areas, milk dealers *are absolutely prohibited* from making Sunday wholesale deliveries, with the qualified exception set out in section 6 of F–22. Under this exception, during the summer season in non-shore resorts (for example, such lake resorts as Lake Hopatcong), dealers will be granted permission to deliver on Sunday from May 15 to September 15, on a showing of hardship to the resort establishment.

(2) In the northern shore area (the strip extending in a southerly direction down the coast from South Amboy to the northern boundary of Atlantic County), two provisions apply:

(a) During the summer season, from May 15 to September 15, wholesale deliveries may be engaged in without restriction, on all days of the week.

(b) During the "off season" from September 16 through May 14, dealers may make such deliveries on only 6 days a week, but there is no Sunday prohibition.

(3) In the southern shore area, comprising most of Atlantic and Cape May Counties, deliveries may be made on Sunday the year round. Unlike the provision for the northern shore territory, there is no specific relaxation for the summer season. During both the summer period and the "off season," dealers may deliver on any 6 days of the week of their own choosing.

Plaintiff contends that F-22, insofar as it relates to Sunday wholesale sales, is arbitrary, discriminatory and beyond the statutory authority of the Director. And the further argument is advanced that the classification of dealers in the various marketing areas for purposes of regulating such sales is illusory. Aside from the problem of conflict with the Sunday closing statute, *N. J. S. A.* 2A:171-1, arising from the attempted authorization of sales on that day, to be discussed later, we agree that the regulation cannot be sustained.

The record contains no dispute that in the vacation shore localities a substantial rise in the population occurs in the summer months. Ignoring for the moment the general legislative ban on the performance of worldly employment or business, that unique circumstance might well justify a special and individual exception authorizing seven day operations. The exception, to be valid, however, would have to be applied equally to all persons similarly situated. *Reid Development Corp. v. Parsippany-Troy Hills Tp.,* 10 *N. J.* 229, 233 (1952); *Washington National Ins. Co. v. Board of Review,* 1 *N. J.* 545, 553 (1949). But the very face of the regulation here reveals that such is not the case. The seven-day summer privilege applies only to the northern shore area. It does not cover Atlantic and Cape May Counties, which, we may notice, contain ocean resort communities and also enjoy a temporarily increased population because of summer sojourners. In those places the business in question may be engaged in only on six days a week. And no basis whatever is indicated for the distinction. Moreover, their dealers, as distinguished from those doing business in the

lake vacation places, are not privileged to apply for relaxation of the regulation in the summer season so as to serve their patrons on seven instead of six days a week.

The disparate treatment of the various marketing districts does not end there. In the northern shore municipalities, when the summer season ends on September 15 and the population returns to normal, wholesale deliveries are restricted to six days a week, but at the will of the dealer, one of the days may be Sunday. Hence the northern and southern shore areas return to equality because in the latter the six-day, Sunday optional, rule prevails throughout the year. This may be contrasted with the activity which exists in a lake resort where vacationers increase the population and Sunday wholesale deliveries from May 15 to September 15 may be made upon application to the Director under F–22. At the end of the summer period such resorts come once again under the Sunday ban.

Plaintiff's standing to seek a judicial solution of its problem stems particularly from a more personal hurt. The greatest impact of the inconsistency occurs in the non-shore Marketing Areas One (where its business is conducted) and Three. The portion of the State covered thereby is considerably larger and its population many times greater and more constant. Yet, even when the shore population returns to normal at the end of the summer, wholesale dealers operating there may serve their customers on Sunday while those in the remainder of the State continue under the prohibition. We perceive no sound reason, and none appears in the record, to support the grant in the one case and the denial in the other. .

The discrimination, thus made to appear, is invidious. No state of facts is shown or may be conceived reasonably on the record to sustain it. It bears no disclosed relation to the public health or welfare generally, nor can it be said from any evidence submitted that it represents a reasonable attempt to effectuate the purpose of the underlying legislation. The face of the regulation deprives it of the ordinary pre-

sumption of validity. *Cf. Mayflower Farms v. Ten Eyck,* 297 *U. S.* 266, 56 *S. Ct.* 457, 80 *L. Ed.* 675 (1936); *De Monaco v. Renton,* 18 *N. J.* 352 (1955); *Washington National Ins. Co. v. Board of Review, supra; Garden State Farms v. Armstrong, supra,* 31 *N. J. Super.* at *pages* 78, 79; *Sarner v. Union Tp.,* 55 *N. J. Super.* 523 (*Law Div.* 1959).

■ Our analysis of the challenged regulation and its application in the various marketing areas is more comprehensive and more critical than that which appears to have been made in the argument and in the briefs of the parties. Consequently, we are concerned as to whether it can be said with complete fairness that the Attorney General had the opportunity to consider the discrimination shown to exist by this opinion. Accordingly, although Regulation F–22 must be and is declared invalid on the existing record, if the Attorney General and the Director wish to introduce additional facts in its support but limited to the illegality herein exposed, they may do so on application within ten days of the date hereof and the action will be remanded to the Office of Milk Industry for that purpose. If such application is made, the appeal will be retained pending the submission of the supplemental evidence and any further findings the Director may deem appropriate.

■ Another matter calls for comment. Prior to the oral argument plaintiff drew attention to the recent case of *Sarner v. Union Tp., supra,* which was decided after the briefs were filed. Although the opinion was relied on in support of the claim of discrimination, a further pertinency suggests itself. The Sunday closing statute, *supra,* provides that "No worldly employment or business, except works of necessity and charity, shall be performed or practiced by any person within this State on * * * Sunday." Under section 6 thereof, *N. J. S. A.* 2A:171–6, "any person may, on * * * Sunday * * * (b) sell and deliver milk" in any municipality if the legal voters grant approval in a referendum at a primary election. Thus the query may be raised as to whether, in the absence of such sanction by

the electors, milk may be sold and delivered on Sunday in any municipality of this State. Since the problem was neither presented nor argued by the parties and is not necessary to our present decision, we do not pass upon it.

A mandate will be entered in accordance herewith.

*For invalidity of regulation*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*Opposed*—None.