62 N.J. Super. 280 (1960)
162 A.2d 891
MATTIE DE NIKE, PLAINTIFF-APPELLANT,
v.
BOARD OF TRUSTEES OF THE STATE EMPLOYEES' RETIREMENT SYSTEM OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1959.
Reargued May 24, 1960.
Decided June 27, 1960.
*284 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Franklin W. Kielb argued the cause for the plaintiff-appellant.
Mr. Lee A. Holley, Deputy Attorney General, argued the cause for the defendant-respondent (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiff appeals from a judgment of the Law Division which denied her motion for summary judgment and dismissed her complaint "on the ground of the lack of jurisdiction."
The complaint alleges that plaintiff's deceased husband, William E. De Nike, "On or about January 20, 1955 pursuant to R.S. 43:15A-47 * * * filed a duly attested application for retirement * * * as Borough Clerk of *285 the Borough of East Rutherford, being a veteran who had attained the age of 62 years * * * under Option 1 with benefits which may be due and payable after his death to be paid to * * * Mrs. Mattie De Nike, wife * * *"; the application requested retirement as of March 1, 1955, and on March 15, 1955 it was approved by the defendant, effective as of March 1; Mr. De Nike died on April 4, 1955 without receiving any payments under the pension system; this, plaintiff claims, left a balance of approximately $29,000 due her, which she demands.
It does not appear from the appendix submitted to us that either the caption or the backer of the complaint included the words "in lieu of Prerogative Writs," as required by R.R. 4:88-3, or that plaintiff considered the complaint anything other than an action at law for a money judgment when it was filed. However, when the defendant's answer alleged that "this action is an appeal from a determination of an administrative agency and pursuant to R.R. 4:88-1 should have been instituted in the Appellate Division," plaintiff replied that the complaint "is one in lieu of mandamus."
In addition to raising the jurisdictional question, defendant's answer admits Mr. De Nike's retirement and death, but denies that the sum claimed by plaintiff is due, because (emphasis ours):
"1. On or about January 20, 1955 William E. DeNike filed an application for retirement with the defendant, Public Employees' Retirement System of New Jersey, wherein he elected to retire under option 1 of N.J.S.A. 43:15A-50.
2. William E. DeNike on or about March 8, 1955 personally appeared at the Office of the Public Employees' Retirement System and thereupon executed a new form whereby he asked to be retired without option and to receive maximum allowance, which allowance would cease at his death pursuant to N.J.S.A. 43:15A-50.
3. The Board of Trustees of the Public Employees' Retirement System at their regular meeting in March approved the decedent's application for maximum allowance retirement to be effective March 1, 1955."
*286 Plaintiff contends that the decedent's alleged request of March 8, that he be retired without option and to receive maximum allowance, was inoperative and did not affect his previous written election to retire under Option 1 because, to quote the reply, "R.S. 43:15A-47 * * * provides that the application be `duly attested' and the deceased, William E. De Nike had not submitted a duly attested application on March 8, 1955."
Each side moved for summary judgment. On the return day of the motions the trial judge said, "I am going to render an order dismissing this action. It should be filed in the Appellate Division. In my opinion the action by the Board of Trustees of the Retirement System, the action which you are seeking is a review of the final decision or action of that body and it is a State Administrative Agency, and under Rule 4:88-8, notice of appeal should have been filed with the Appellate Division." Accordingly, he entered the judgment of dismissal.
Plaintiff argues (1) that the complaint was the equivalent of one for mandamus under the old practice and that the Law Division had jurisdiction and should have granted summary judgment in her favor; (2) even if the Law Division did not have jurisdiction it should not have dismissed the complaint but transferred the case to the Appellate Division under R.R. 1:27D and Central R.R. Co. v. Neeld, 26 N.J. 172, 184 (1958); and (3) in any event, since the case is now here, we should decide it on the merits in her favor. Cf. Bruder v. Teachers' Pension & Annuity Fund, 27 N.J. 266, 273 (1958).
The defendant answers that (1) the Law Division properly dismissed the complaint for lack of jurisdiction; (2) transfer under R.R. 1:27D was not possible because the action had not been instituted in the Law Division within the time limited by R.R. 1:3-1 (b) for appeals to the Appellate Division (Central R.R. Co. v. Neeld, supra, 26 N.J., at p. 184) or even within the time allowed for the institution of in lieu actions in the Law Division, (R.R. 4:88-15); and *287 (3) in any event defendant is entitled to prevail on the merits.
Mr. De Nike retired under N.J.S.A. 43:15A-47, which provides (emphasis ours):
"a. A member who shall have reached 60 years of age may retire from service by filing with the board of trustees a written statement, duly attested, stating at which time subsequent to the execution and filing thereof he desires to be retired. The board of trustees shall retire him at the time specified or at such other time within 30 days after the date so specified as the board finds advisable."
It is not disputed that on January 20, 1955 Mr. De Nike completed and signed an application for retirement upon a printed form furnished by defendant. (This application is marked "Exhibit A" in defendant's appendix and hereafter will be so called.) He acknowledged it before a notary in Bergen County, who so certified in the space provided in the form for that purpose.
Defendant admits that by Exhibit A Mr. De Nike elected to receive his benefits under Option 1 of N.J.S.A. 43:15A-50, the pertinent parts of which are as follows:
"* * * at the time of his retirement any member may elect to receive his benefits in a retirement allowance payable throughout life, or he may on retirement elect to receive the actuarial equivalent at the time of his annuity, his pension or his retirement allowance, in a lesser annuity, or a lesser pension, or a lesser retirement allowance, payable throughout life, with the provision that:
Option 1. If he dies before he has received in payments the present value of his annuity, his pension or his retirement allowance as it was at the time of his retirement, the balance shall be paid to his legal representatives or to such person as he shall nominate by written designation acknowledged and filed with the board of trustees at the time of his retirement, either in a lump sum or by equal payments over a period of years at the option of the payee.

* * * * * * * *
No optional selection shall be effective in case a beneficiary dies within 30 days after retirement and such a beneficiary shall be considered an active member at the time of death until the first payment on account of any benefit becomes normally due."
*288 The only affidavit submitted to the trial court by the defendant upon the motion for summary judgment was one signed by Mr. Borden, its secretary, which said:
"3. William E. DeNike on or about March 8, 1955 personally appeared at the Office of the Public Employees' Retirement System and thereupon executed a new form whereby he asked to be retired without option and to receive maximum allowance, which allowance would cease at his death pursuant to N.J.S.A. 43:15A-50. A copy of this application is attached.
4. The Board of Trustees of the Public Employees' Retirement System at their regular meeting in March approved the decedent's application for maximum allowance retirement to be effective March 1, 1955."
Defendant has submitted to us an affidavit of Gladys H. Cleary, assistant secretary of the defendant, which was not submitted to the trial court. We pass the question of the propriety of such action. Cf. R.R. 4:88-9; Metropolitan Motors v. State, 39 N.J. Super. 208 (App. Div. 1956). The affidavit says (emphasis ours):
"4. On March 8, 1955 William E. DeNike visited the office of the Public Employees' Retirement System and was referred to me for interview concerning his retirement and his selection of pension benefits.
5. During the course of said interview I explained in detail to Mr. DeNike the benefits payable under the maximum retirement allowance and the Option 1 allowance, and I also explained to him that under the maximum life benefit plan all payments would cease upon his death with the exception of 3/16ths of his annual salary payable as insurance.
6. At Mr. DeNike's request I prepared a written paper, identical to his original notarized application for retirement with the exception that on this new document maximum retirement was indicated as his selection. Mr. DeNike then drew a line through the statement `I wish to retire under Option 1 [] 2 [] 3 []' and signed said document in his own hand and at the bottom of said document wrote in `Mrs. Mattie DeNike, wife' under a paragraph typed on the document requesting the member to indicate his beneficiary of the 3/16ths insurance. (Said amended document annexed hereto as Exhibit C).
7. Mr. William E. DeNike then left this amended selection with me to become part of his retirement file."
*289 An examination of Exhibit C (the paper signed by Mr. De Nike on March 8) reveals the following:
1. It is on the same printed form as Exhibit A, and copies almost everything that appears in Exhibit A, including the date of January 20, 1955, and the acknowledgment which had been taken on January 25, 1955 by the notary in Bergen County!
2. Exhibit C is not attested or acknowledged, even though Miss Cleary says in her affidavit that "March 8, 1955 I was certified as a Notary Public of the State of New Jersey and was able to notarize any documents executed before me if the need arose."
We shall first deal with the question whether the Law Division had jurisdiction of this action and, if not, whether the action should have been transferred to this court instead of being dismissed.
In Bruder v. Teachers' Pension & Annuity Fund, 27 N.J. 266, supra, plaintiff instituted an action at law against the defendant Fund "for the return of * * * wartime service contributions of $360.53. The Pension Fund * * * refused to honor the demand, creating the issue herein involved * * *.
The Pension Fund moved for a summary judgment contending that: (a) the action is barred by the defense of sovereign immunity, or (b) the act, N.J.S.A. 18:13-112.3 et seq., provides for no such refund." Plaintiff then "requested that the case be retained as `a suit requiring a state official to perform an administrative function required at law.' Plaintiff sought leave to amend the complaint to one in lieu of prerogative writ (mandamus) and to join, as a party defendant, the particular administrative official charged with the alleged ministerial duty. The trial judge rejected this request * * *." (p. 270) The Supreme Court held that the trial court should have granted the request to turn the action into one in lieu of mandamus because "The Legislative mandate is clear, and involves no exercise of administrative discretion." (p. 271)
*290 Since here the amount due plaintiff is a matter of simple arithmetic, and its payment to her involves no administrative discretion, it may be that the Law Division should have retained jurisdiction and brought in the disbursing officers as defendants. However, we need not decide that for, as was pointed out in Mathews v. Finley, 46 N.J. Super. 175 (App. Div. 1957), whether or not the Law Division had jurisdiction "is not a matter of any consequence now, R.R. 1:27D(b)," because that rule provides, in subdivision (a), that "where any court is without jurisdiction of the subject matter * * * it shall, on motion or on its own initiative, order the cause, with the record and all papers on file, transferred to the proper court," and, in (b), that "Where any cause transferrable under paragraph (a) * * * is appealed without having been transferred, the appellate court may decide the appeal and direct the appropriate judgment to be entered * * *." Therefore, even if the court below was correct in ruling that it had no jurisdiction, it should not have dismissed the complaint but should have caused the transfer of the case to this court.
Defendant argues that even if the trial court erred in dismissing the action on jurisdictional grounds, the judgment of dismissal should be affirmed because the action was out of time; as a complaint in lieu of mandamus it was filed too late under R.R. 4:88-15, and as an appeal it was barred by R.R. 1:3-1(b). Therefore it could not have been transferred to this court. Central R.R. Co. v. Neeld, 26 N.J. 172, 184 (1958).
Defendant admits that if the Law Division did have jurisdiction, it had the right under R.R. 4:88-15(c) to inquire whether the facts make it "manifest that the interests of justice require" that the time limited by R.R. 4:88-15(a) should be enlarged. However, says defendant, plaintiff's remedy was by appeal to this court under R.R. 4:88-8, and R.R. 4:88-15(c) may not be applied by this court in such an appeal because we are bound by R.R. 1:3-1(b), and may not enlarge the time more than 30 days (R.R. *291 1:27B (d)) no matter how plainly the interests of justice may require a longer extension.
We see no reason, and none is suggested to us by the defendant (other than its construction of the language of the rules) why all courts which have jurisdiction should not have the same right to remedy injustices created by the unfair or unrealistic operation of time limitations. Prior to the new rules, all prerogative writ cases were heard in the former Supreme Court. Central R.R. Co. v. Neeld, supra; Carls v. Civil Service Commission of New Jersey, 17 N.J. 215, 218-221 (1955); Ward v. Keenan, 3 N.J. 298 (1949). Under our present practice, the Law Division and the Appellate Division each has jurisdiction over all such cases, no matter by what writs they would have been prosecuted at common law, the only difference being that if the defendant is a state agency, plaintiff should proceed in the Appellate Division, by appeal under R.R. 4:88-8 or for declaratory judgment under R.R. 4:88-10, while against all other agencies he must sue in the Law Division. In other words, regardless of the essential sameness of the claim, it is only the identity of the defendant that determines whether one division or the other has jurisdiction.
Obviously injustice may result from time limitations, no matter which agency is defendant. Certainly it could not have been the intention of the Supreme Court, in promulgating R.R. 4:88-15(c), to give state agencies a greater right than others to profit from manifest injustice. All of the considerations which led to the adoption of that rule, stated in Schack v. Trimble, 28 N.J. 40 (1958), apply to all prerogative writ actions, no matter who the defendant is. Therefore, we conclude that the Appellate Division has the same right as the Law Division to use R.R. 4:88-15(c) to prevent injustice. Cf. In re Regulation F-22, Office of Milk Industry, New Jersey, 30 N.J. 335, 340 (1959).
Shortly after her husband's death plaintiff, accompanied by a neighbor, called at defendant's office in Trenton and spoke first to Miss Cleary and later to Mr. Borden. They *292 told her that she was entitled only to $275.46, her husband's pension for the one month and four days from the date of his retirement to the date of his death, plus $1,093.73 life insurance. When plaintiff expressed disbelief and disagreement she was invited to a meeting, described as follows in Miss Cleary's affidavit (emphasis ours):
"On Tuesday, May 17, 1955, at 9:30 A.M., the Retirement Committee of the Board of Trustees conducted an informal hearing in Conference Room No. 24 of the State House in behalf of the widow of Mr. William DeNike. Mr. Charles I. Levine presided as Chairman and members John J. McMahon and Fred Toegel were present. Mrs. Edna A. Horn and Mrs. Mattie DeNike were present. Mrs. Horn testified that Mr. William DeNike had a very bad heart condition and presented affidavits from six persons concerning Mr. DeNike's physical condition and a statement from Dr. Roland E. Lueddecke, physician for Mr. DeNike, to the effect that he had treated him for the past two years for coronary sclerosis. Though there was evidence presented to the effect that Mr. DeNike desired to care for his wife after death the only evidence presented concerning his actual election of benefits on March 8, 1955 was presented by myself. The Retirement Committee received as exhibits the above mentioned records of the Public Employees' Retirement System."
What that "evidence presented concerning his actual election" was we do not know. We may not supply it by presuming it was the same as Miss Cleary now sets forth in her affidavit, for she does not say what "evidence" (other than the "records") she "presented" to the committee on May 17.
On July 18, 1955 defendant wrote plaintiff as follows:
"Dear Mrs. DeNike:
At the regular meeting of the Board of Trustees held on Tuesday, July 12, a poll was taken of the members in the matter of their decision regarding your claim for reversal of the maximum retirement allowance granted to your husband, William E. DeNike based on his selection under date of March 8. At a ratio of four to one it was agreed that it was impossible to accede to your request. * * *
 Very truly yours,
 George M. Borden
 Secretary "
*293 It is to be noted that only three members were present at the "informal hearing" of May 17 while five voted at the Board meeting of July 12. What the three reported to the five, and how, we do not know. This raises the question whether plaintiff had a proper "hearing" and whether there was an "adjudication." Cf. Mazza v. Cavicchia, 15 N.J. 498, 514 (1954); In re Masiello, 25 N.J. 590 (1958); Central Home Trust Co. v. Gough, 5 N.J. Super. 295, 300 (App. Div. 1949); Rutherford Lodge No. 547 v. Hock, 1 N.J. Super. 223, 227 (App. Div. 1949); Sayre & Fisher Brick Co. v. Dearden, 23 N.J. Super. 453, 462 (Law Div. 1952).
Upon the motion for summary judgment, plaintiff filed an affidavit in which she said:
"6. I thought that this matter was now ended. I did not know I had a right of appeal. I was not represented by an attorney at any time in the proceedings. I did not understand that I was entitled to a formal hearing. I never had the benefit of a legal opinion concerning the merits of the case until I retained my present counsel.
7. My husband had customarily taken care of all the business matters while he was alive. I did not understand what I could do about this matter. I left everything to Mrs. Horn, my neighbor. I felt that I could not afford a lawyer as I did not have any money. Mrs. Horn thereafter was incapacitated for many months while she tried to get help for me. I refused to accept any of the benefits that were offered to me under the insurance or the part payment of the pension for a period of one month since I was required to sign a waiver of any and all rights in the funds under the care and control of the New Jersey State Employees' Retirement System on account of membership of my husband in the pension system."
Plaintiff did not have counsel until 1958. Counsel's affidavit filed in support of the motion for summary judgment says that he wrote defendant, asking plaintiff's rights, on October 14, 1958, and on October 29 Mr. Borden answered, saying that the Board of Trustees had met on October 21, 1958 and had "agreed that there were no further facts presented which would permit justification for an appeal" *294 from the Board's decision of July 12, 1955, "at which time it was agreed that it was impossible to accede to her request for a reversal." Then, to continue from counsel's affidavit:
"4. On November 18, 1958 I informed the Board of Trustees that I had been instructed to file suit to compel payment of the pension benefits due Mrs. DeNike. In reply by letter of December 1, 1958, by Chauncey L. Barrett, Administrative Assistant, I was informed that `We have referred the case to the Attorney General's office for their consideration.'
5. On December 2, 1958, I wrote to the Attorney General of New Jersey, the Hon. David Dickson Furman, informing him that I would withhold suit pending a formal opinion from his office with reference to the DeNike Pension. The matter was referred to Miss June Strelecki, Deputy Attorney General for review. On December 18, 1958, I informed Miss June Strelecki that I would `hold in abeyance the summons and complaint.' On February 3, 1959, I received a letter from Miss June Strelecki informing me that the matter had been considered by the Board of Trustees and Mrs. DeNike was informed of their views on July 18, 1955; that `the Board of Trustees again discussed this matter on October 21, 1958 and found that no new evidence was presented to them which would justify a reversal of their previous decision. Consequently the status of this matter is as outlined in the letter of July 18, 1955 referred to above.'
6. On February 17, 1959, complaint was filed in the above entitled matter."
Our first reason for refusing to apply the time limitations now asserted by defendant is that defendant did not raise this defense in the trial court. Further, we have concluded that since the complaint was filed in the Law Division February 17, 1959, it was less than 45 days after the most recent event which triggered the running of the time limits, viz. the receipt on February 3, 1959 of the letter of the Deputy Attorney General. Cf. Schack v. Trimble, supra; Lettieri v. State Board of Medical Examiners, 24 N.J. 199 (1957), surveyed in Moran, "General Administrative Law," 12 Rutgers L. Rev. 26, 89 (1957). See also Moran, 14 Rutgers L. Rev. 323, 339 (1960).
Finally, if the filing was literally out of time, the interests of justice dictate that the time be extended under R.R. 4:88-15(c). If this action were not against a state agency, *295 shielded by governmental immunity against almost everything but prerogative writs (Bruder, supra; Duke Power Co. v. Patten, 20 N.J. 42 (1955)), the claim here involved would be a mere action ex contractu, with the corresponding statute of limitations, and there would be no problem. Ball v. Board of Trustees of the Teachers' Retirement Fund, 71 N.J.L. 64 (Sup. Ct. 1904); compare Taylor v. New Jersey Highway Authority, 22 N.J. 454 (1956) with Bruder, supra, and Patten, supra; and compare Meyer v. Board of Trustees of Teachers' Pension and Annuity Fund, 49 N.J. Super. 255 (App. Div. 1958) with Roth v. Board of Trustees, Public Employees Retirement System (App. Div. 1958) in the same volume at p. 309. We are compelled to talk about "administrative agencies" and "administrative action," when all that is involved is a suit for money due, simply because otherwise the claimant might not be able to sue the state agency at all. However, viewed realistically, what did defendant do here that deserves to be called "administrative," or even "action"? It merely refused to pay a money claim.
In their efforts to reach justice between citizens and government the courts have been forced to steer diverse and sometimes bewildering courses between the Scylla of governmental immunity and the Charybdis of the technicalities of prerogative writs and their limitations of time and jurisdiction. In 1955, in his article "Civil Practice and Procedure," 10 Rutgers L. Rev. 351-380, Professor Schnitzer reviewed the cases decided during 1954-1955 involving judicial review of administrative proceedings, and came to the following conclusions, stoically understated:
"The new practice was intended to guaranty against the loss or delay of rights `* * * by reason of any of the niceties of procedure that surround the use of the prerogative writs at common law and that were abolished by the newest Constitution and the rules adopted pursuant thereto.'
Granted the objective, the course and limits of judicial review of administrative determinations is so far from clear, that the appellate courts found it necessary to deal with the subject repeatedly during the last term." (p. 355)

* * * * * * * *
*296 "It is evident from this course of decision that judicial review of administrative proceedings has not yet shed all its procedural complications. The chief difficulty is the continuing array of multiple avenues of relief, in distinct courts, under varying procedures and subject to different time restrictions. A definitive solution may not be at hand until these remedies coalesce in a single forum equipped to afford comprehensive relief, under a single calendar of time limitations." (p. 360)

* * * * * * * *
"It may be doubted whether the public interest is served by preserving alternate modes for review of official action subject to differing time limits * * *." (p. 361)

* * * * * * * *
"* * * equitable relief survives only as a means of escaping the narrower time limits upon procedure under R.R. 4:88. It would be preferable to attack these limits directly, if they have proved too restrictive to serve the public interest, and to obviate procedural riddles by confining relief to a single form of remedy governed by a uniform calendar of limitations." (p. 362)
The situation has not improved since 1955. The opinions still proliferate, so, as Judge Learned Hand once said, we "do not wish to add to the barrels of ink that have been spent in logging the route." We shall therefore say merely that chief among the considerations which have influenced us to apply R.R. 4:88-15(c) are those stated in Schack v. Trimble, supra, as follows (28 N.J., at pp. 49-51):
"The general problem implicated here was the subject of attention in both the Yannuzzi [Yannuzzi v. Mayor and Council of Borough of Spring Lake, 22 N.J. 567 (1956)] and Lettieri [Lettieri v. State Board of Medical Examiners, 24 N.J. 199 (1957)] cases, supra. It concerns the proper application of the time bar of R.R. 4:88-15(a) to instances of informal or ex parte administrative determinations where the relief sought turns on a legal question or questions. The import of the Yannuzzi and Lettieri exceptions to R.R. 4:88-15 is that where informal or ex parte determinations are made by administrative officials charged with the performance of ministerial functions, there is not ordinarily a sufficient crystallization of a dispute along firm lines to call forth the policy of repose. See Moran, "General Administrative Law," 12 Rutgers L. Rev. 26, 88-89 (1957).

* * * * * * * *
* * * We do not say that a legal right cannot be finally resolved by an administrative determination from which review is not timely sought. The exceptions to R.R. 4:88-15 which are grounded solely on the nature of the question of law involved, relate *297 only to important constitutional law questions. * * * But before a right to relief which turns on legal questions of lesser importance is barred by failure to seek in lieu relief, the process by which such right is determined at the administrative level ought to be of such a nature as to fully impress upon the litigant both the finality of the determination and the precise grounds upon which relief was denied. Ordinarily, informal or ex parte determinations of administrative officials charged with the performance of ministerial duties are not of such a nature.
In sum, it may be said that the interests of justice would ordinarily require that an extension be permitted for an out of time attempt to obtain judicial review of an informal or ex parte administrative determination, where the right to relief depends upon the determination of a legal question. This is so in the absence of laches or of prejudice resulting to the government from the extension. See Thornton v. Village of Ridgewood, supra, 17 N.J. at p. 510; cf. Duke Powder Co. v. Patten, 20 N.J. 42 (1955)."
Although Schack v. Trimble involved the action of a municipal building inspector, we think the words of the Supreme Court were not intended to have only a provincial application. They apply here.
We turn then to the merits.
Plaintiff contends she is entitled to the Option 1 benefits first selected by her husband, amounting to approximately $29,000, because Exhibit C is a nullity since (1) it was executed March 8, whereas the retirement was approved by the Board as of March 1; (2) the statute required it to be "duly attested" whereas, in fact, it was not attested at all; and (3) even if otherwise valid, Exhibit C became void by reason of De Nike's death within 30 days after its execution.
It is conceded that Exhibit C does not expressly revoke Exhibit A, or even refer to it. Exhibit C is alleged by defendant to be an implied revocation of Exhibit A because it is said to express a different choice than Exhibit A. Therefore, urges plaintiff, if Exhibit C was for any reason not effective, it did not impliedly revoke Exhibit A.
As to point (1), N.J.S.A. 43:15A-50 provides that the retiring member shall make his election of benefits *298 "at the time of his retirement." We find nothing in the statute which permits him to make, alter or revoke it after his retirement. Cf. Katz v. New York City Teachers' Retirement Board, 291 N.Y. 360, 52 N.E.2d 902 (Ct. App. 1943); Levy v. New York City Teachers' Retirement Board, 265 App. Div. 118, 37 N.Y.S.2d 915 (App. Div. 1942); Keily v. Teachers' Retirement Board, 226 App. Div. 99, 234 N.Y.S. 518 (App. Div. 1929). However, DeNike's retirement was not complete until March 15, when the Board approved his application for retirement, even though the Board allowed it as of March 1. Gordon v. State Employees' Retirement System of N.J., 33 N.J. Super. 526 (App. Div. 1955); Morgan v. Board of Trustees of the Teachers' Pension and Annuity Fund, 120 N.J.L. 567 (Sup. Ct. 1938), affirmed 122 N.J.L. 382 (E. & A. 1939).
In life insurance cases involving policies in which the insured does not have the right to change the beneficiary, the intended beneficiary has no vested rights until the policy is actually issued. Prior to that time the insured may change his beneficiary as he pleases. Pierce v. New York Life Insurance Co., 174 Mo. App. 383, 160 S.W. 40 (Ct. App. 1913); 37 C.J., Life Insurance, § 343, p. 578. Upon the same rationale we hold that here, until the Board approved the retirement on March 15, De Nike had the right to amend or revoke his selection of Option 1. Cf. the Katz, Levy and Keily cases, supra.
As to the argument that an amendment or revocation of an option must be "duly attested," it is to be noted that the statute contains no provision that a choice of maximum benefits terminable at death, or a revocation of a selection of an option must be "duly attested" or executed in any particular fashion. The statute deals with retirement and the choice of benefits as two separate steps, the provisions for retirement being in section 47 while those relating to the choice of benefits are in section 50. We deem it significant that section 47 provides not only for voluntary retirement (subdivision "a") but for involuntary as well (subdivision *299 "b"). Section 47 provides that one who seeks to retire voluntarily under "a" must file "with the board of trustees, a written statement, duly attested," but it also provides, under "b," that one may be retired for age even against his wishes and, obviously, without his signing anything. Yet each has the same right to select one of the retirement benefits provided in section 50.
When Option 2 or 3 is selected, under section 50, some person must be named as beneficiary, and the nomination must be "acknowledged." Under Option 1 the balance remaining at the time of the retiring member's death "shall be paid to his legal representatives or to such person as he shall nominate by written designation acknowledged and filed * * *" We take that to mean that under Option 1, when no person is so nominated, the member's legal representatives take without nomination. Under Option 4 the member may also nominate a beneficiary, but the statute does not say how. And nowhere in the statute are we given any clue as to how the selection of maximum benefits payable for life and terminable at death shall be evidenced.
In spite of this uncertainty as to how benefits are to be selected, the statute seems to contemplate that the member who retires under section 47 make some choice at the time of his retirement. Section 50 stresses that the choice of option be made "at the time of his retirement"; that language appears four times in the section. Appellant therefore argues that the words "duly attested" in section 47 should be construed to be a minimum requirement for the selection of an option under section 50 as well, since such a selection is required to be made at the time of retirement; and, since Exhibit C was not attested at all, it is a nullity.
Since the statute does not expressly say that an amendment or revocation, or a selection of maximum lifetime benefits, such as we have here, must be "duly attested," we decline to inject those words into the statute by construction. The statute has been in force for many years, and it may be that benefits have been and are being paid on *300 the strength of writings (not of the type expressly mentioned in the statute as requiring such solemnization) which are neither acknowledged nor "duly attested."
Finally, plaintiff says that since De Nike died within 30 days of March 8, the date of the execution of Exhibit C, the selection is not "effective" because of the last paragraph of section 50 which provides:
"* * * No optional selection shall be effective in case a beneficiary dies within 30 days after retirement and such a beneficiary shall be considered an active member at the time of death until the first payment on account of any benefit becomes normally due."
The purpose of this provision is to prevent "death bed" applications from being effective. Frigiola v. State Board of Education, 25 N.J. Super. 75, 79 (App. Div. 1953); Morgan v. Board of Trustees of the Teachers' Pension and Annuity Fund, supra. Of course, the Board has no power to waive or alter this statutory provision. Cf. Gordon v. State Employees' Retirement System, supra; Rosenthal v. State Employees' Retirement System of New Jersey, 30 N.J. Super. 136 (App. Div. 1954); Frigiola v. State Board of Education, supra.
The Board's first answer to this argument is that the last paragraph of section 50, above quoted, applies only when the retirant has selected one of the four numbered options contained in section 50, and does not apply when he chooses to receive maximum benefits terminable at death. In substance, the Board contends that the words "such beneficiary" must be interpreted to mean a beneficiary who made a selection of one of the numbered options. This construction would do violence to the language and discriminate, for no just reason, against those who make a choice of benefits other than one of the numbered options. The representatives of one who is "an active member at the time of death" receive, under N.J.S.A. 43:15A-41(c), the following:
*301 "(1) His accumulated deductions at the time of death together with regular interest; and
(2) An amount equal to 1 1/2 times the compensation upon which his contributions are based or received by the member in the last year of creditable service; * * *."
If we were to adopt the Board's position, it would mean that the representatives of A, who selected one of the numbered options but died within 30 days of his retirement, would receive the substantial benefits of section 41 above enumerated, while the representatives of member B, who dies at the same time but had made a selection other than one of the numbered options, would receive nothing. Yet, if both died before "the first payment on account of any benefit becomes normally due," the Board concedes that A and B would each be "considered an active member at the time of death," and the representatives of each would receive the same benefits under section 41. In the absence of express words in the statute forcing us to that conclusion, we decline to hold that the Legislature intended to so unreasonably discriminate. Cf. Levy v. New York City Teachers Retirement Board, supra, at page 918 of 37 N.Y.S.2d. We hold that the words "such a beneficiary" in the last paragraph of section 50 include all members who die within 30 days after retirement, and the representatives of every such beneficiary are entitled to the benefits granted in section 41(c).
The question then arises, "what is the date of retirement" from which the 30 days are to be calculated?
Although the statute does not specifically provide for the approval of retirement by the Board retroactively, the action of the Board in doing so here is not challenged. It appears that it has always been the practice of the Board to approve retirement retroactively, and therefore we would not now cast doubt upon the validity of such action unless it were plainly illegal. In New York, retroactive retirement is recognized as valid. O'Brien v. New York State Teachers' Retirement Board, 215 App. Div. 220, 213 N.Y.S. 738 *302 (App. Div. 1926), affirmed 244 N.Y. 530, 155 N.E. 884 (Ct. App. 1926). The New York statute quoted in the O'Brien case permits retirement "as of" the date selected for retirement, whereas our section 47 a says the Board "shall retire him at the time specified" in the application, or within 30 days thereafter. However, we perceive no reason, and none has been suggested to us, why retirement may not legally be granted retroactively under our statute as freely as under the New York statute.
We hold that when retirement is retroactive, as it was here, the date of "retirement," from which the 30 days is to be calculated, is the date when the Board approves the retirement. In the case at bar that date was March 15. Any other construction would violate the purpose of the last quoted paragraph in section 50 which was, as we have said, to prevent "death bed" applications from being effective. For example, suppose that on March 1 M applies for retirement as of April 1, under Option 2 with A as beneficiary; on April 15 M changes to Option 1 with B as beneficiary; on April 16 the Board approves the retirement, effective as of April 1; and on May 3 the member dies. If the April 15 selection were permitted to stand, the 30-day limitation in section 50 would be cut to 18 days  contrary to the statute, and beyond the power of the Board.
Therefore, since De Nike died 30 days after March 15, he died "an active member at the time of death" and both Exhibit A and Exhibit C were nullified.
The Board argues that this is not so, because De Nike was alive on April 1, when "the first payment on account of any benefit [became] normally due" to him. We hold that these words in the last paragraph of section 50 do not cut down the 30-day period but are in addition to it. An example of a case in which these words would apply is if the member asks on May 1 to be retired as of June 30, the Board approves the application on May 25, but the member dies July 5, before "the first payment on account of * * * benefit becomes normally due." The member *303 is then considered "an active member at the time of death," even though he died more than 30 days after the date the Board approved his retirement.
For the foregoing reasons we conclude that the defendant is obliged to pay on account of Mr. De Nike's death the benefits provided for in section 41(c). If the parties can not agree upon the amount, this court will order the taking of the necessary testimony pursuant to R.R. 4:88-9. If the plaintiff is not entitled individually to these benefits and if others, or she in a different capacity, must be joined as a party plaintiff, an appropriate order may be presented.
No costs.