' ON REHEARING
En Banc.
HOOD, Judge.
We granted a rehearing in this case to reconsider the question of whether the optional selection made by the decedent in his application for retirement became effective before his death.
The pertinent facts, as set out in our original opinion, are that Mr. Maillet applied to defendant for disability retirement under the Louisiana Teachers’ Retirement System on December 21, 1962. In his application, Maillet selected Option 2, as provided in LSA-R.S. 17:641, and he requested that the retirement allowance become effective at the earliest possible date. On January 9, 1963, the Medical Board of the Teachers’ Retirement System recommended to the Board of Trustees that the application be approved. On January 14, 1963, the defendant mailed a letter to Mail-let, advising that “the Board of Trustees will retire you on disability retirement effective January 20.” Mr. Maillet died on January 23, 1963, which was more than thirty days after he applied for retirement, but less than thirty days after the application was approved by the Board of Trustees or after the date fixed by the Board as the effective date of retirement.
In our original opinion we held that the thirty-day period, which is set out in LSA-R.S. 17:641, is “merely an administrative delay granted to the board to process the claim,” that the option selected by the decedent became effective either upon the filing of the application or upon being approved by the Board, and that the widow of the decedent thus was entitled to the benefits under such an option even though Maillet *12 died within less than thirty days after the date fixed by the Board of Trustees as the effective date of his retirement. We based our conclusions to that effect on the decision rendered in the case of St John v. Board of Trustees, Louisiana State Employees’ Retirement System, La.App. 1 Cir., 150 So.2d 328.
The St. John case, however, involved an application for retirement under the Louisiana Retirement Act (LSA-R.S. 42:541 et seq.), while in the instant suit the decedent applied for retirement under an entirely different statute (LSA-R.S. 17:571 et seq.). The pertinent portion of the Louisiana Retirement Act, controlling in the St. John case, provides:
“No option shall become effective until thirty days after application for retirement * * (LSA-R.S. 42: 602) (emphasis added)
The court held that the thirty-day provision in that section of the act was “merely a period for administrative processing of the application,” and that a qualified member is “effectively in retirement” as of the date the application is received by the retirement board.
The corresponding section of the Teachers’ Retirement Act (LSA-R.S. 17:571 et seq.), under which the decedent in the instant suit sought to retire, provides:
“ * * * [N]o optional selection shall be effective in case a beneficiary dies within thirty days after retirement, and that such a beneficiary shall he considered as an active member at the time of death, until the first payment on account of any benefit becomes normally due, * * (LSA-R.S. 17:641) (emphasis added)
We think it is of some significance that in the retirement statute which governed in the St. John case the thirty-day period is fixed as being “after application for retirement,” whereas in the Teachers’ Retirement Act the thirty-day period is fixed as being "after retirement.” Also, the Teachers’ Retirement Act, unlike the statute involved in the St. John case, goes on to specify that a beneficiary “shall be considered as an active member * * * until the first payment on account of any benefit becomes normally due.” The two statutes, therefore, contain entirely different provisions relating to the effective date of retirement, and we are now convinced that we erred in holding originally that the St. John case, which involved only the State Retirement Act, is applicable here.
In LSA-R.S. 17:571, the term “Retirement” is defined as follows:
“(19) ‘Retirement’ means withdrawal from active service with a retirement allowance granted under the provisions of this Part.”
And LSA-R.S. 17:637, relating to disability retirement benefits, provides:
“Upon the application of a member in service or of his employer, any member who has five or more years of creditable service may be retired by the board of trustees, not less than thirty nor more than ninety days following the date of filing such application, on a disability retirement allowance, provided that the medical board, after a medical examination of the member, certifies that the member is mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired.”
Under this last quoted portion of the Teachers’ Retirement Act, it is apparent that the authority to retire a member for disability is vested in the Board of Trustees, and that, aside from the minimum time specified in that section for the Board to act on the application, the Board cannot retire a member for disability until after the Medical Board certifies that the member's mentally or physically incapacitated. In the instant suit the Medical Board did not certify that Maillet was incapacitated until *13 January 9, 1963. The Board of Trustees, therefore, could not have acted on the application until after this certificate was filed, which occurred less than thirty days before Maillet’s death, so it would have been impossible for the Board to have retired the decedent before the thirty-day period began to run. Shortly after this certificate was filed, the Board of Trustees did retire Mail-let, effective January 20, 1963, which was exactly thirty days'after the application for retirement had been submitted.
Under the provisions of the act, it seems clear to us that the retirement of Maillet became effective on January 20, 1963, and that the optional selection which he made would not normally have become effective until thirty days after that date. Since he •died within that thirty-day period, we think he must be held to have been an “active member” at the time of his death.
An issue similar to that presented here was considered by the Supreme Court of New Jersey in Morgan, et al v. Board of Trustees of the Teachers’ Pension and Annuity Fund, 120 N.J.L. 567, 1 A.2d 30. In that case a member of the Teachers’ Pension and Annuity Fund applied for retirement on September 19, 1936, selecting Option I as her plan of retirement. She died seven days later. The New Jersey statute provided, “If Option I is requested, the retirement does not become effective earlier than thirty days from the time Option I request is received in the Pension Fund Office.” It also provided that, “The board of trustees shall retire said member at the time specified or at such other time within thirty days after the date so specified as the board of trustees may find advisable.” The court, in concluding that the optional selection made by the decedent was not effective at the time of her death, said:
“ * * * The purpose of the rule is to minimize ‘death bed’ applications from being effective * * *.
*******
“* * * A reading of the statute, * * *, clearly shows that the act of retirement was not by virtue of the application, but by the action of the respondent. * * *
******
“The applicant in the case at bar having died within a few days after the application was filed and before the same was acted upon by the respondent, the retirement within the meaning of the statute never occurred. The prosecutors are not therefore entitled to the sum which would have been due had retirement under Option I become effective.” (p. 31)
The case of De Nike v. Board of Trustees of State Employees Retirement System of N. J., 62 N.J.Super. 280, 162 A.2d 891 (1960), involved an application for retirement under the New Jersey Public Employees’ Retirement System. The statute governing that system contained provisions relating to the date on which an optional selection becomes effective, which provisions are identical to those contained in LSA-R.S. 17:641. The decedent in that case applied for retirement on January 20, 1955, electing to retire under Option I, and requesting that the retirement become effective March 1, 1955. On March 8, he executed a new form asking to be retired without option. On March 15, the Board of Trustees approved the application for retirement, making it effective, retroactively, on March 1, 1955. The applicant died on April 4, 1955. The court held that the date of retirement was the date when the Board approved the retirement, which in that case was March 15, 1955, and that since the decedent died within thirty days of that date he was an “active member” at the time of his death. In so holding, the court said:
“The purpose of this provision is to prevent ‘death bed’ applications from being effective. * * ‡
*14 ******
“We hold that when retirement is retroactive, as it was here, the date of 'retirement,’ from which the 30 days is to be calculated, is the date when the board approves the retirement. In the case at bar that date was March IS. Any other construction would violate the purpose of the last quoted paragraph in section SO which was, as we have said, to prevent ‘death bed’ applications from being effective. * * *
******
“Therefore, since De Nike died [within] 30 days after March 15, he died ‘an active member at the time of death’ * * * ” (162 A.2d pp. 903-904) (emphasis added)
In Woods, et al v. Reilly, 147 Tex. 586, 218 S.W.2d 437, (1949), a member of the Teachers’ Retirement System of Texas wrote a letter to the Board of Trustees of that system in June, 1939, indicating her desire to retire. This letter was considered by the Board as an application for service retirement, although no optional plan of retirement was selected. More than two years later, on August 19, 1941, the applicant completed another form of application for retirement, in which application she, for the first time, made an optional selection, and she designated August 31, 1941, as the effective date of her retirement. She died on September 3, 1941, which was less than thirty days after the last application was filed and before any payment for service benefits became “normally due.” The Texas statute contained a provision identical to LSA-R.S. 17:641, relating to the time when the optional selection of the member becomes effective. The Supreme Court of Texas, in holding that the applicant was an “active member” at the time of her death, said:
“Although we agree with the Court of Civil Appeals that the Act is not unconstitutional in the respects mentioned, we cannot agree that Miss Reilly retired within the meaning of the Act. Under the definition of ‘Retirement’, above noted, she must not only have withdrawn from service, but also must have been granted a retirement allowance under the provisions of the Act. Though she had withdrawn from service in 1939 it was not until August 19, 1941, that she attempted to select the optional settlement and designated August 31, 1941, as the effective date of her retirement. She died on September 3, 1941, which was less than thirty days from either the date of the application or the date designated for retirement. Prior to the time of her death no retirement allowance had been granted and no payment thereon had become ‘normally due’. Thus it seems obvious that she had not retired within the meaning of the Act, but was an ‘active member’ at the time of her death. * * * ” (218 S.W.2d p. 441)
We are convinced that the views expressed in the above cited cases are correct, and that we erred in the conclusions which we reached originally herein.
In our opinion, the thirty-day period provided in LSA-R.S. 17:641 was not intended to be merely a delay for administrative purposes, as we originally held, but instead the purpose of such delay was to minimize or to prevent “death bed” applications from being effective.
 In this case we conclude that the effective date of Mr. Maillet’s retirement was January 20, 1963. Under the provisions of LSA-R.S. 17:641, the optional selection made by him would have become effective thirty days later, or on February 19, 1963, had he lived that long. He died within that thirty-day period, however, so his death occurred before the optional selection became effective, and under the express provisions of LSA-R.S. 17:641, he must be considered as having been an “ac *15 tive member” of the system at the time of his -death.
For these reasons, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, rejecting plaintiff’s demands for disability retirement or benefits as set out in LSA-R.S. 17:641, Option 2, but reserving to plaintiff any and all rights which she has or may have against defendant for other benefits or for the refund of contributions. All costs of this suit and of this appeal are assessed to plaintiff-appellee.
Reversed and rendered.
SAVOY, J., dissents for reasons assigned in original opinion.
FRUGÉ, J., dissents for reason assigned by SAVOY, J.